Madeline Nelson, *Plaintiff in Error*, v. The State of Florida, *Defendant in Error*.

En Banc.

Opinion filed May 6, 1930.

Petition for rehearing denied June 6, 1930.

*Edwin R. Dickenson,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the Defendant in Error.

ANDREWS, Commissioner:

Plaintiff in error, also Naomi Kuhn and Arden Kuhn were convicted in the Criminal Court of Record of Hillsborough County upon an information charging them jointly with robbing Philip Lavatiatta while they, the said defendants, were armed with a dangerous weapon; and each was sentenced to three years in state prison. Naomi Kuhn, one of the defendants, procured a separate appeal, and, the judgment being defective, writ of error was dismissed. Cauhn, alias Kauhn v. State (Fla.) 122 So. R. 565.

The separate appeal of Arden Kuhn from an order of the trial court denying a writ of coram nobis was dismissed upon the ground that the judgment of conviction was invalid, and petitioner had other remedies. Kuhn v. State, 98 Fla. 206, 123 So. R. 755.

It appears from the transcript that Madeline Nelson, sole plaintiff in error here, was sentenced, but the record thereof not showing a formal adjudication of conviction, the writ of error was dismissed; the judgment was thereupon corrected and entered in due form, as appears evidenced to this Court by special certificate.

While alleged errors are argued as to the admission and failure to admit certain evidence, the plaintiff in error seems to rely for a reversal mainly upon the insufficiency of the evidence to sustain the verdict, claiming that it is only supported by the uncorroborated testimony of the complaining witness, Lavatiatta.

Necessarily the jury must have relied to a large extent upon the testimony of the complaining witness, the only State witness present when the offense was committed, and no doubt the jury took into consideration several inconsistent statements made by Mrs. Nelson and the other two defendants. There are many corroborating circumstances which are entirely consistent with guilt and entirely inconsistent with innocence, and these circumstances followed immediately one after another culminating in the dramatic flight of Mrs. Nelson from Tampa and her subsequent return from Mississippi under arrest.

The complaining witness, Philip Lavatiatta, for convenience called Philip, in substance testified that Mrs. Nelson drove up to his place about July 26, before this robbery occurred on the 28th following and said she heard he had "struck" a thousand dollars in a Bolita game and she tried to sell him a new car for three hundred dollars; that she could not furnish a title certificate, but would give a bill of sale and he then declined to take the car; that a day or two later, Mrs. Nelson and Naomi Kuhn drove to his place of business which was on the same day the robbery occurred the night following, and got a drink of liquor; that Mrs. Nelson then said to witness in the presence of Dr. Myers, "Philip, I want to go out with you tonight;" to which he replied that he could not go that night as he was already invited by Dr. Myers, but would go with her the next night, but she said she would come get him at Dr. Myers' place rather late; that after calling up Dr.

Myers' place she and Miss Kuhn arrived in a Chrysler roadster near nine-thirty and drove witness from Dr. Myers' house over to where the defendants had rooms. Dr. Myers' testimony corroborated Philip's as to the above incidents. Upon arrival at Mrs. Nelson's the phonograph was turned on and while witness was dancing with Naomi Kuhn, the defendant Arden Kuhn, supposed brother of Miss Kuhn, (neither of whom he had known before that day) came in with a gun and said "Hold them up," twice, and he put his gun to witness' ribs as he backed against the wall with hands up, when Mrs. Nelson went through his pockets and even his sleeves; that she took $4.35 and said "Ain't that a hard luck break," then Kuhn said, "Give him a nickel for street car fare;" there being no street car, he said "Give him seventy-five cents for taxi-cab," but there being no phone, finally Kuhn and Miss Kuhn took witness down the street and put him out; that the witness gave the alarm at once to police; that Miss Kuhn was arrested (after putting out Kuhn) after a chase of several blocks by police. When Kuhn was arrested later he gave his name as "Daniel Trubie."

The evidence further shows that after that night Mrs. Nelson and the other two defendants abandoned the house where the hold-up occurred and the police and deputy sheriffs located them at a vacant house on Memorial Highway belonging to a Mrs. Mays, who after being wired returned on Friday after the robbery and found her house had been occupied without her knowledge or consent. The testimony further shows that considerable effort was made to arrest the plaintiff in error by the police and deputy sheriffs and finally she was recognized as she drove up near the Mays home, whence she made a swift escape and was recognized and pursued late at night near the county line making a swift flight towards the north in the Chrysler

roadster. H. D. Dolphin, deputy sheriff, who brought her back from Mississippi testified that she told him on the way back that shortly before this trouble she had been out with Philip and got drunk and was under the impression the liquor was doped or something; that he robbed her of twenty dollars; that on the night Philip said he was robbed at her house "Buddy" (Mr. Kuhn) asked Philip to give Mrs. Nelson back her twenty dollars that he had stolen from her and he admitted taking it but did not have it at the time; that this boy "Buddy" Kuhn put a gun on him and held him up and searched him and took what money he had on him and it did not cover the amount stolen and they took him back toward town and put him out; that after he was put out he got in a car with a policeman and chased this blonde girl and had her arrested. The deputy states that the above statement is not what he thought, but is what Mrs. Nelson told him.

The plaintiff in error at the trial testified that she and Naomi Kuhn were at Philip's place that day before the alleged robbery and drank some whisky and they went by Dr. Myers' a little after nine and got Philip and when they got to her house they had a drink of whisky; that Philip offered them some cocaine and he took some and they refused; that they were dancing and she (Mrs. Nelson) asked him about twenty dollars that he owed her and he in a laughing way said, " 'If I have more than $4.00 on me you can have it' and told me I could search him and see and I felt in his pocket and found $4.00 and something, and I said, 'No Philip you haven't enough to pay me'." She also testified that he took twenty dollars from her sometime before that when he got her drunk; that this boy Kuhn had no gun and pointed no gun at Philip. She further testified as to Philip trying to take advantage of Naomi Kuhn in the next room and a row about it, and that

Naomi Kuhn and her brother took Philip back to town. These inconsistent accounts given by her, the jury evidently did not believe as they were so inconsistent with other admitted facts and circumstances.

There are argued other assignments of error based upon the trial court sustaining objections of the State to questions propounded to complaining witness, relative to his using dope and cocaine.

This court has held that for the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interests, or animus, "as connected with the cause or with the parties thereto," and in the discretion of the court a like inquiry may be made into the past life and history of the witness when the matters inquired about tend to affect credibility and that the rules which should govern the trial court in exercising its discretion in allowing or disallowing inquiries into collateral matters to affect credibility, do not authorize questions to be put for the sole purpose of disgracing the witness and the court should not allow inquiries into matters which do not tend to affect credibility. The transaction inquired about must be one which bears directly upon the present veracity of the witness. Wallace v. State, 41 Fla. 547, 26 So. R. 713; Tully v. State, 69 Fla. 662, 68 So. R. 934; Herndon v. State, 73 Fla. 451, 74 So. R. 511.

Evidence that a witness has been "convicted" of crime may be adduced to affect his credibility and such conviction may be proved by questioning the proposed witness, or if he denies it, by producing the record of his conviction; also testimony of his "general reputation" may be given to affect his credibility (Section 4373, Comp. Gen. Laws of Florida, 1927). When the character of a witness is gone into, the only proper object of inquiry is as to his reputa-

tion for truth and veracity, as neither his general character, nor particular phases of character, can be gone into. Mercer v. State, 40 Fla. 216, 24 So. R. 154.

The general rule is that evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. Squires v. State, 42 Fla. 251, 27 So. R. 864; Robertson v. State, 40 Fla., 509, 24 So. R. 474.

There is no evidence in this case that Philip was under the influence of "dope" either at the time he was robbed or at the time of testifying.

In the case of Eldridge v. State, 27 Fla. 162, 9 So. R. 448, this Court quoted from Wharton on Evidence as follows:

"The use of opium cannot be introduced to impair credit, unless it be shown that the witness was under the influence of opium when examined or when the litigated event occurred."

There is considerable argument and statements in the brief of plaintiff in error, no basis for which appears in the testimony as evidenced here by the bill of exceptions, mainly as to the business of the complaining witness; also argument upon what is termed the unusual incident of a jury convicting a "daughter of an Alabama sheriff" (of which there is no evidence) upon the uncorroborated testimony of a "foreigner" (The evidence shows Philip is a native of Tampa and has always lived there), and that complaining witness is engaged in "dope" smuggling, is an "underworld dealer" and has a number of cases pending against him. This accounts in part for the brief summary of the evidence herein given.

The defendant, Mrs. Nelson, admits she had been knowing Philip for about two years and had been out at night drunk with him. The evidence shows this defendant to

have been the one initiating these several contacts with Philip at his place of business and soliciting drinks and making engagement for the night of the occurrence and then conveying him to her place. If she knew all she says she knew about him, her admitted acts may have shaken her veracity with the jury. The law recognizes the principle of equal justice regardless of social or racial forbears. She had the undisputed right to choose her associates and the jury may have found that she was no more worthy of belief than the man with whom she associated and now claims is an underworld "dope" peddler and "bootlegger."

Society, represented by the State, is the real party in interest and prosecuting this case and not the complainant witness. While there was some evidence admitted that may now, after looking back over the whole testimony, be classed as irrelevant and immaterial, it was not such however, as could seriously be considered misleading or confusing to the jury.

In the case of Griswold v. State, 77 Fla. 505, 82 So. R. 44, this Court said:

"The admission of evidence which may be irrelevant because the fact sought to be proved is remote does not *per se* render such admission reversible error; it must be shown that it was misleading or confusing."

See also Neicarta v. State, 80 Fla. 493, 86 So. R. 347; Elliott v. State, 77 Fla. 611, 82 So. R. 139.

In the case of Troop v. State, 98 Fla. 385, 123 So. R. 811, this Court held that a verdict upon conflicting testimony requiring consideration of witnesses' character will not be disturbed unless evidence shows lack of due consideration.

The judgment of the trial court is hereby affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the Court below should be, and the same is hereby, affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.