ROBERT T. MULLIGAN *v.* STATE OF MARYLAND

[No. 97, September Term, 1970.]

*Decided November 25, 1970.*

430

The cause was argued before ORTH, THOMPSON, and POWERS, JJ.

*Arthur Dale Leach,* with whom was *Richard S. Paulson* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Hilary D. Caplan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

At a bench trial in the Criminal Court of Baltimore Robert T. Mulligan was found guilty of the second degree murder of Mary L. Mulligan, eight months of age. A sentence of 12 years was imposed. On appeal we reversed the judgment and remanded the case for a new

trial. *Mulligan v. State*, 6 Md. App. 600 (hereinafter sometimes referred to as *Mulligan primus*). On retrial in the Criminal Court of Baltimore Mulligan was again convicted of murder in the second degree, this time by a jury, and again a 12 year sentence was imposed. Appeal from that judgment is now before us. The judgment is reversed and the case is remanded for a third trial. We are obliged to reverse the judgment because a statement obtained from Mulligan by custodial interrogation reached the jury without a preliminary determination by the trial court that it was voluntary. It was in fact and in law involuntary.[1] Both the failure of the court to make a preliminary determination as to voluntariness and the placing of the statement before the jury without such determination were due to the tactics of the prosecutor.

*THE LAW*

The law is firmly established. In *Barnhart v. State, supra*, we reviewed the rule to be applied when a defendant challenges a statement obtained from him by the police. We quoted *Day v. State*, 196 Md. 384, 399:

> "The practice in this State, approved in many cases, is that the court first hears evidence without the jury to determine whether a confession is voluntary and should be admitted. If it decides to admit it, the same evidence is then given to the jury, as it has the final determination, irrespective of the court's preliminary decision, whether or not the confession is voluntary, and whether it should be believed. In so doing, the jury is entitled to have before it all of the evidence which affects the voluntary character of the document, and which the court passed upon in admitting it."

---

1. The preliminary decision by the trial court involves a mixed question of law and fact. The duty of the court in that regard is to decide whether the *prima facie* proof was such as to establish that the statement was freely and voluntarily made. *Barnhart v. State*, 5 Md. App. 222, 224.

We said, at 226, citing *Jackson v. Denno*, 378 U. S. 368:

> "A defendant's constitutional rights are violated when his challenged confession is introduced without the preliminary decision by the trial judge of its voluntariness after an adequate hearing."

The trial judge's conclusion that the confession was voluntary must appear from the record with unmistakable clarity. *Lynch v. State*, 9 Md. App. 441; *Murphy v. State*, 8 Md. App. 430. And a statement by the defendant found to be involuntary by the trial judge is not to be heard by the jury which determines guilt or innocence. *Barnhart v. State, supra*, at 226. If the inadmissible confession gets before the jury it is reversible error even though it is thereafter excluded and the jury instructed not to consider it as part of the evidence as knowledge of the confession by the jury is apt to influence unduly their deliberations to the extent of depriving the defendant of a fair and impartial trial. *Smith v. State*, 189 Md. 596, 606. See *Cleveland v. State*, 8 Md. App. 204. So any statement obtained in violation of the procedural standards enunciated in *Miranda v. Arizona*, 384 U. S. 436 is *per se* to be excluded and the State is not afforded an opportunity to show that its admission was harmless error. *Pratt v. State*, 9 Md. App. 220; *Hutchinson v. State*, 9 Md. App. 41. We point out:

> "No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were

in fact truly exculpatory it would, of course, never be used by the prosecution." *Miranda,* at 476-477.

*Miranda* held that a statement obtained from an accused during a "custodial interrogation" is to be excluded unless designated procedural safeguards are followed. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444.

*THE FACTS*

Appellant made four statements concerning the baby. The first was at the hospital to which he and his wife had taken the child in an ambulance. They were told by Dr. Frank Ditori that the child had died. Dr. Ditori said the child was brought in by two firemen who were attempting resuscitation. He observed that the child was beyond resuscitation and declared her dead on arrival. There were "some marks on the child's body, bruises. Several of these were located on the legs. There was a large one located on the chin. At this point I turned the child over and also noted a large bruise on the child's lower back." The doctor talked to appellant and Mrs. Mulligan. He questioned them "as to whether the child had been sick previously and had any sustained illnesses or in fact had had any accidents which may have caused some marks on the child's body." Appellant said that the child had been well and that there had been no accidents involving her. He could not account for the bruises.

The second was made to the police. Lt. Charles W. Goodrich testified that he first approached appellant at the school where appellant was employed. He told appellant they "were investigating the death of his baby and I asked him if he would come to the Southwestern District and discuss the case with me." They went to the police station in a police car. On the way the police questioned him. Goodrich testified:

"All the questioning mostly was done in the

automobile on the way to the station. It was more or less—I was talking with Mr. Mulligan for my purpose of getting a background on him and he elaborated. He told me he had two or three years of college. He went to a school in Virginia or Washington and I was trying to more or less familiarize myself with Mr. Mulligan and I asked him questions, how long he had been at the school, what did he teach, what grade did he teach, and then he said could you be specific and tell me what this is about and I told him we were investigating the death of his baby, Mary Mulligan.

At this point I asked him, 'Is there anything else you have to add to the statement you gave to the police at the hospital?' He said, 'No, sir.' It was at this point that I decided the investigation should be completed further and some other place. [sic]

As soon as we arrived at the station he was put on the books and placed in the cell block." [2]

The third was at the police station to his wife in the presence of the police. Appellant admitted he had beaten the baby.

The fourth was a formal statement thereafter obtained by the police by interrogation.

The statements were all made prior to *Miranda* which was decided 13 June 1966. Therefore the police did not have the benefit of its holdings and it is conceded by the State that the required warnings were not given appellant by the police. The first trial of appellant was subsequent to the *Miranda* decision and thus appellant's case

---

2. The officer later explained:
"To me, when he made this statement in the car it was a denial that he had beaten the child and from the M. E. [Medical Examiner] statement, it was obvious that he had beaten the child and the purpose of the statement was to see if he would make a statement and when he said he had nothing to add, to me then I knew he did in fact beat the child."

was within its ambit as it applies to all cases the trial of which began after the date of the decision. It was because the fourth statement was admitted in evidence at the first trial that we reversed the judgment. *Mulligan v. State, supra. Miranda* was, of course, also applicable to appellant's retrial. Compare *Jenkins v. Delaware,* 395 U. S. 213; *Boone v. State,* 3 Md. App. 11, 31-36. In *Mulligan primus* we said, at 609-610:

> "We think that the appellant was in custody within the meaning of *Miranda* at the time he accompanied the officer from the school to the police station. We cannot say that the appellant was not 'deprived of his freedom in any significant way.'"

However we expressly did not decide whether the second statement, made in the police car, was admissible. At 617.

Appellant moved to suppress the statements and there was a hearing out of the presence of the jury. At the close of the evidence adduced by the State and appellant on the issue the court, desiring to ascertain definitely what it was to rule upon, inquired if both the second statement, made in the police car, and the third statement, made to appellant's wife, were involved. The prosecutor said: "The State is wishing to introduce into evidence only the statement made to his wife in the presence of Lieutenant Goodrich and those other persons in the room. That's the only statement the State is intending to offer." He later reiterated: "I am referring only to the statement made to the wife in the presence of the officers. That's all the State is attempting to introduce." After extensive argument, continuing on to the next day, the court found that the statement appellant made to his wife, even though made while he was in custody, was not the result of police interrogation, that it was without the *Miranda* directives and that it was freely and voluntarily made. It ruled that it was admissible. Cf. *Dennis v. Warden,* 6 Md. App. 295. On the representation by the prosecutor

that the statement it found preliminarily to be voluntary was the only one to be proffered, it made no ruling as to the other statement.

The jury were recalled and the State proceeded to put the evidence as to the voluntariness of the statement before them as was the proper procedure. *Barnhart v. State, supra.* The first witness called by the State was Lt. Goodrich. The State elicited that he had gone to the school where appellant was working, that he asked appellant to go to the police station, and that appellant agreed to do so and got in the police car. Then the State brought out the question asked by the officer in the police car and appellant's answer and the second statement was before the jury without a preliminary determination by the judge that it was voluntary and admissible. Thereafter at a bench conference the court said:

> "I was completely taken by surprise when Lieutenant Goodrich testified to the conversation on the way to the station which I understand the State was not going to offer, and therefore I did not rule on it in the motion to suppress. * * * I had understood from our conversation yesterday, and the reason I did not rule on it, was because I understood the State was not going to introduce it. That was the whole purpose of my question at the beginning and very outset of the hearing. I would have ruled it out. * * * I specifically asked whether this was in issue and counsel agreed or at least the State indicated they were not going to offer it, and I therefore accepted the extent that it bore on over-all question and did not rule on it."

There was extensive argument.[3] Appellant moved for a

---

3. At one point the prosecutor alleged that even had the court ruled the statement inadmissible he had the right to make inquiry before the jury concerning it so that if no objection was made it would go before the jury. Such tactics are not to be condoned. We emphasize that if the court finds on its preliminary determination that a confession is involuntary, it is to be excluded from the

mistrial. The court held the motion *sub curia* and ultimately denied it.

The denial was an abuse of discretion. Not only did the second statement get before the jury without a preliminary finding that it was voluntary, but the court observed that had it been called upon to make such a finding it would have found the statement to be involuntary. And, as we have seen, had an involuntary statement been placed before the jury there would have been reversible error, the harmless error rule not being applicable. The admissibility *vel non* of the statement in the circumstances here was not dependent on objection made by appellant at the time it was introduced before the jury. It was no more admissible in the circumstances absent a preliminary ruling on its voluntariness than had it been ruled inadmissible. Compare *Pinto v. Pierce*, 389 U. S. 31; *Smith v. State, supra*.

We hold that the statement made in the police car was inadmissible. The evidence before the court in the instant trial confirms our conclusion in *Mulligan primus* that appellant was in custody when it was made. The officer said appellant agreed to go to the police station, but had he not, "I would have placed him under arrest." On cross-examination he was asked: "Officer, wasn't it your intention to arrest Mr. Mulligan if he didn't come willingly?" The answer was: "No doubt about it. * * * [The] investigation had focused in his area." The officer made no attempt to talk to appellant about the case at the school. "I thought we would have a better surrounding at the station house where we could talk in private. * * * If he had not agreed I would have had no alternative but to take him to the station and place him under arrest." The taking of appellant to the police station in the police car was, in the circumstances, depriving him of his

jury's consideration; such exclusion is not dependent upon further objection by the defendant. Compare *McCarson v. State*, 8 Md. App. 20 and *Edwards v. State*, 7 Md. App. 108 where there was a preliminary determination by the court that the confession *was* voluntary and no objection when it was introduced before the jury.

freedom of action in a significant way; he was in custody within the contemplation of *Miranda*. And there is no question in the light of Goodrich's testimony set out earlier in this opinion regarding the questioning of appellant in the police car that he was being interrogated. We find that the second statement, made in the police car, was obtained by a custodial interrogation without compliance with the procedural safeguards of *Miranda*. It was therefore involuntary and inadmissible *per se*.

In view of our holding that the denial of the mistrial in the circumstances requires reversal of the judgment, we do not reach the other questions presented by appellant. We observe, however, that we think that the preliminary determination of the lower court that the third statement, i.e., that made by Mulligan to his wife at the police station, was voluntary and admissible was proper. By our independent constitutional appraisal of the evidence on the issue we find that the evidence was sufficient to show *prima facie* that the statement was not the product of police interrogation and was thus without the ambit of *Miranda*, even though appellant was then in custody, and that it was otherwise voluntary. In so finding, the legality *vel non* of appellant's arrest is not material. *Ervin v. State*, 4 Md. App. 42. However *Davis v. Mississippi*, 394 U. S. 721, may be construed, the Supreme Court made clear in *Morales v. New York*, 90 S. Ct. 291 that it then chose not to grapple with the question of the legality of custodial questioning on less than probable cause for a full-fledged arrest. Until it says otherwise, we shall continue to adhere to the rule in this jurisdiction that an illegal arrest *per se* does not render a confession inadmissible.

> *Judgment reversed; case remanded for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*