# KENNETH WILBUR BATES *v.* STATE OF MARYLAND

[No. 1188, September Term, 1975.]

*Decided June 25, 1976.*

The cause was argued before FREDERICK J. SINGLEY, JR.,

and J. DUDLEY DIGGES, Associate Judges of the Court of Appeals of Maryland and JAMES S. GETTY, Associate Judge of the Fourth Judicial Circuit, all specially assigned.

*Michael S. Elder, Assistant Public Defender*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*Bernard A. Raum, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *Leonard L. Casalino, Assistant State's Attorney for Prince George's County*, on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Kenneth Wilbur Bates, convicted of storehouse breaking and grand larceny by a Prince George's County jury, raises but one issue on appeal: whether his written confession was improperly admitted into evidence. Consideration of this contention requires a summary of the circumstances which led to Bates' arrest.

On 18 November 1974, a breaking and entering occurred at Weaver's Texaco, a gasoline service station in Prince George's County, and a citizens' band radio, a tape deck and two handguns were taken. On the night of 31 January 1975, Bates, who had parked a U-Haul truck in front of Weaver's Texaco, was detained and questioned by police as a result of a complaint to the police that Bates was leaning out of the truck, holding a gun and threatening to shoot one Nick Gable.

Meanwhile, the police learned that there was a bench warrant outstanding against Bates in an apparently unrelated matter.[1] He was arrested on this warrant, and was permitted to drive his U-Haul truck to the Oxon Hill police station, escorted by Detective Earl W. Jones. There, Bates was questioned by Jones in regard to what was referred to

---

1. There is an intimation that the warrant was issued at the instance of Nick Gable, who alleged that Bates had threatened him with a shotgun.

as the "Mac's Arco case," apparently the break-in of another service station. Bates told Jones that at the time of the break-in, he had been in the company of a tow truck driver named Leer. Jones left to find Leer, and Bates was taken to Upper Marlboro in execution of the bench warrant. Meanwhile, Jones had located Leer and was told that Leer had not picked up Bates until after the crime had been committed.

Jones, apparently believing that this disproof of Bates' alibi provided probable cause to arrest Bates in connection with the Mac's Arco case, called the sheriff's department in Upper Marlboro and left instructions that Bates was to be detained. When Jones reached Upper Marlboro and found that Bates had been released, he radioed Oxon Hill, where the U-Haul truck was parked, and left instructions that Bates was to be arrested when he returned for the truck.[2] Jones then returned to Oxon Hill about 5:30 a.m. and arrested Bates, who had been detained as he attempted to leave the parking area in the truck.

Jones questioned Bates about the Mac's Arco case, and the interrogation then turned to the Weaver's Texaco case. According to Jones, Bates admitted involvement in the Weaver's Texaco break-in. Later, Bates' pregnant wife joined him at the police station. When she began to exhibit signs of difficulty,[3] according to Bates, Jones told him, "I was going nowhere unless I did things his way." When asked what happened next, Bates said:

> "Well, that [a confession] was the only way I was going to be released and take care of the furniture that I had in the truck, and take care of my wife and get her to a doctor. I had to do it."

> \* \* \*

> "I told him [Jones] to start writing. I would sign what he had."

2. Bates and his wife, who was six months pregnant, had been evicted earlier on 31 January from the apartment which they occupied. The truck contained their household goods and personal possessions.

3. Subsequently, Mrs. Bates was prematurely delivered of twin boys, who died after several days.

Bates testified that Jones wrote the questions and answers which he signed without reading. This was vehemently denied by Jones.

About two hours later on the same morning, Detective M. M. Shapiro, who was investigating the Weaver's Texaco break-in, apparently took over the interrogation. According to Shapiro, it was he who prepared the statement which Bates signed. The citizens' band radio and tape deck taken from Weaver's Texaco were found in the U-Haul truck; and a .25 caliber automatic pistol, which had also been taken, was recovered from an individual to whom Bates had sold it.

When Bates' counsel moved to suppress the confession, an exclusionary hearing was held out of the presence of the jury, see *Lego v. Twomey*, 404 U. S. 477 (1972); *Gill v. State*, 265 Md. 350, 289 A. 2d 575 (1972). There was testimony by Jones and Shapiro, and Bates testified in his own behalf, describing in some detail his version of the circumstances which led to the preparation of the statement. The trial judge, out of the presence of the jury, ruled that the voluntariness of the confession had been established by a preponderance of the evidence and denied Bates' motion to suppress the confession.

The hearing was then resumed in the presence of the jury, and the statement was admitted over a general objection by the defense. Detective Shapiro testified for the State.

At the end of the State's case, a motion for a judgment of acquittal was denied. Bates took the stand in his own defense and repeated the testimony he had given at the suppression hearing. He denied any involvement in the Weaver's Texaco break-in, and said that on the night of the break-in, he was engaged from 11:00 or 12:00 o'clock at night until 7:00 a.m. the following morning in towing a disabled Cadillac to Richmond, Virginia. He explained his possession of the stolen items by saying that they had been given to him by Nick Gable.

Bates' contention that the statement was improperly admitted must be considered in the light of the circumstances surrounding his arrest and interrogation which were, to say the least, bizarre. In a period of about 12

hours, he had been arrested four times: once by Jones, at 9:30 or 10:00 p.m. on 31 January, when Bates sat in the U-Haul truck, an arrest which aborted when Jones suspected that Bates "was being set up by someone." The second arrest, on the bench warrant, about an hour later, resulted in Bates' release on his own recognizance at Upper Marlboro. The third warrantless arrest, by Jones, about 5:30 a.m., related to Mac's Arco, and was clearly without probable cause. The fourth, by Shapiro, at about 10:00 a.m. on 1 February, for the Weaver's Texaco break-in, was bottomed on an induced or tainted confession obtained, according to Bates, by Jones in an environment which was both custodial and coercive. It was clearly a product of his arrest in the Mac's Arco case.

We are satisfied that under these circumstances, the admission of the confession was improper. A careful reading of the record fails to disclose facts sufficient to constitute probable cause for the warrantless arrest of Bates on Mac's Arco charge. Jones did not explain how he rationalized the arrest, or reveal in his testimony any additional facts upon which he relied in his personal conclusion that Bates was the perpetrator of the break-in. It is clear that the information obtained from Leer did not meet the two-pronged test enunciated in *Aguilar v. Texas*, 378 U. S. 108 (1964) and *Spinelli v. United States*, 393 U. S. 410 (1969), since while it may have met the test of "basis of knowledge," it utterly failed to meet the test of "credibility." The arrest, therefore, was predicated upon nothing except the fact that Bates had given what appeared to be a false alibi. Reasonable men may become suspicious when a false alibi is given, but Leer's information, not shown to be truthful, fell far short of probable cause to arrest Bates, *see Cleveland v. State*, 8 Md. App. 204, 218-19, 259 A. 2d 73, 82 (1969). We have no doubt that a warrant to arrest Bates would never have been issued if based solely upon the facts which Jones revealed in his testimony.

The State would have us avoid this phase of the matter on the ground that the specific point was not made at trial. However, this overlooks the principle that a general

objection, such as the one made here to the admission of the confession, is sufficient, *Robert v. State*, 220 Md. 159, 167-68, 151 A. 2d 737, 741 (1959); *Giles v. State*, 10 Md. App. 593, 598, 271 A. 2d 766, 769 (1970), and that grounds for the objection need not be stated unless requested by the Court, Maryland Rule 522 d 1, made applicable to criminal causes by Rule 725 f. We think that the objection may be regarded as encompassing both the voluntariness of the confession and the taint derived from the illegal arrest.

As we have already held, the warrantless arrest of Bates for the Mac's Arco break-in at approximately 5:30 a.m. on 1 February was patently illegal because Jones lacked probable cause. As a result, Bates' subsequent confession was potentially a product of that arrest. At the suppression hearing, the trial court determined, from a preponderance of the evidence, that Bates was given his *Miranda* warnings and the confession to the Weaver's Texaco break-in was voluntary. There was, however, no finding that the illegal arrest did or did not taint the confession.

The issue before us today concerns the interplay between the Fourth and Fifth Amendments, and is virtually identical with the one before the Supreme Court in *Brown v. Illinois*, 422 U. S. 590, 591-92 (1975):

> "whether the [inculpatory] statements were to be excluded as the fruit of an illegal arrest, or were admissible because the giving of *Miranda* warnings sufficiently attenuated the taint of the arrest."

Essentially, *Brown* holds that a confession obtained as a result of an illegal arrest must be examined in the light of both the Fourth and the Fifth Amendments. At a suppression hearing, the trial court must determine whether *Miranda* warnings, *Miranda v. Arizona*, 384 U. S. 436 (1966), were given and whether, by a preponderance of the evidence, the confession was freely and voluntarily given and not a result of threats or promises on the part of police officers, *Lego v. Twomey, supra*, 404 U. S. at 478-79; *Smith v. State*, 189 Md. 596, 603-04, 56 A. 2d 818, 821-22 (1948); *Mulligan v. State*, 18 Md. App. 588, 598-99, 308 A. 2d 418, 424-25 (1973).

These findings are necessary to satisfy the Fifth Amendment's privilege against self-incrimination and the due process clause of the Fourteenth Amendment.

The trial court's inquiry at the suppression hearing, however, is not completed upon a finding that *Miranda* warnings were given and the confession was voluntarily made. Because the arrest was illegal, there must be a Fourth Amendment determination whether the confession resulted from "an intervening independent act of a free will," *Wong Sun v. United States,* 371 U. S. 471, 486 (1963). This determination must be made "[i]n order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken," *Brown v. Illinois, supra,* 422 U. S. at 602. Chief Judge Orth, for this Court, in *Ryon v. State,* 29 Md. App. 62, 71-72, 349 A. 2d 393, 400 (1975), recently extracted three factors from *Brown v. Illinois, supra,* 422 U. S. at 603-04, which should be employed by the trial court in order to establish whether or not the confession obtained after an illegal arrest was tainted by that arrest:

> "(i) the temporal proximity of the arrest and the confession;
> (ii) the presence of intervening circumstances; and
> (iii) 'particularly the purpose and flagrancy of the official misconduct.' "

What we propose to do in the present case is to reverse Bates' conviction, for we are convinced that the State failed to satisfy its burden of showing, at the suppression hearing, that the confession did not result from exploitation of the illegal arrest, *Brown v. Illinois, supra,* 422 U. S. at 602; *Wong Sun v. United States, supra,* 371 U. S. at 486; *Ryon v. State, supra,* 29 Md. App. at 82. We need not consider the Fifth Amendment problem because, even assuming that proper *Miranda* warnings were given Bates and the confession was voluntary, we are convinced, upon an independent constitutional review of the evidence, that Bates' Fourth Amendment guarantees were violated.

### (i) Temporal Proximity

Bates' arrest for the Mac's Arco break-in occurred at approximately 5:30 a.m. on 1 February, and the confession was obtained through continuous interrogation which began almost immediately following this arrest. There can be no doubt but that the confession was the product of this interrogation, coming somewhere between three and five hours later. This degree of temporal proximity between the arrest and the confession is virtually identical with that found in *Ryon v. State, supra; Wong Sun v. United States, supra,* and *Brown v. Illinois, supra.*

### (ii) Intervening Circumstances

No intervening circumstances are disclosed by the record. Jones made no effort to present Bates before a judicial officer of the District Court for formal charging or the setting of bail, in response to the mandate of Maryland District Rule 709 a, until after the confession had been signed by Bates.

### (iii) Flagrancy of the Official Misconduct

We deem the conduct of Jones, Shapiro, as well as the other police officers involved, to have been flagrantly improper. The record indicates that Bates was arrested four times within a 12 hour period. Furthermore, Bates' wife was in need of medical advice, yet no effort was made to assist her, nor does Bates appear to have been allowed food, drink, or sleep in the 12 hours which passed.

> "All of this, coupled with the fact that they [the police] did not take [Bates] before a judicial officer ... compels the belief that the officers thought that a confession was essential to their case, and to that extent, at least, the arrest at that time was investigatory. The circumstances of the arrest give the appearance of having been calculated to cause surprise, fright and confusion to the end that an inculpatory statement would be made," *Ryon v. State, supra,* 29 Md. App. at 84.

116

In light of *Brown v. Illinois, supra,* we hold that the State failed to sustain its burden of showing that Bates' confession was not tainted by the illegal arrest. The trial court erred in failing to grant Bates' motion to suppress the confession.

*Judgments reversed; case remanded for a new trial.*