625 So.2d 982 (1993)
Michael O'NEIL, Gloria O'Neil, his wife, and Kevin O'Neil and Synergy Gas Corporation, Appellants,
v.
Jasmine GILBERT, Appellee.
Nos. 92-2183, 92-2177.
District Court of Appeal of Florida, Third District.
October 26, 1993.
Michael O'Neil, in pro. per.
Peters, Robertson, Lax, Parsons & Welcher and Yvette Rhodes Prescott, Miami, for Synergy Gas Corp.
Hoffman & Hertzig and Carl Hoffman, Coral Gables, for appellee.
Before SCHWARTZ, C.J., and HUBBART and COPE, JJ.
SCHWARTZ, Chief Judge.
The plaintiff Jasmine Gilbert recovered a jury verdict and the judgment now on appeal on the basis of her testimony that the serious burns she sustained on August 30, 1989, had been caused by the explosion of an allegedly defective gas stove at the apartment she shared with the tenant, her childhood friend from Haiti, Janine Sylfradin. To the direct contrary, Sylfradin stated essentially that Gilbert had been injured when a so-called voodoo ritual "lucky bath"  involving the use of fire  which Gilbert had been performing on herself went awry.

I.
Viewing it in the required light most favorable to the appellee, we find the evidence sufficient to support a finding of liability against both Synergy Gas Corporation, which had inspected and attempted to repair the stove, Russell v. Jacksonville Gas Corp., 117 So.2d 29 (Fla. 1st DCA 1960), and the O'Neils, the owners and landlords of the apartment. Mansur v. Eubanks, 401 So.2d 1328 (Fla. 1981). Hence, we reject the appellants' respective claims to directed verdicts in their favor.

II.
We reverse for a new trial on all issues, however, because of the erroneous admission of improper impeachment evidence concerning the primary witness for the defense. In *983 attempting to discredit Sylfradin's obviously devastating testimony  which was doubly so because it came from a close friend who had no apparent reason to hurt her  the plaintiff, over objection, introduced extensive evidence on Janine's cross-examination and through the rebuttal testimony of an "expert" witness, an immigration attorney, suggesting that she was in this country illegally and had made misrepresentations to the authorities to secure the lawful residency status which had been granted her.[1] On the face of it, this issue was no more than an impermissible attempt to embarrass the witness on an immaterial matter. See Wallace v. State, 41 Fla. 547, 576, 26 So. 713, 722 (1899). The appellee successfully argued below, however, and contends here that Sylfradin's immigration status was admissible to show her "bias" in favor of the defendants' position. We do not agree.
While evidence of a witness's bias or prejudice is of course pertinent and admissible as reflecting upon his credibility in a particular case, § 90.608(2), Fla. Stat. (1991), the immigration issue does not qualify under this rule. The plaintiff's argument that it did is plainly fallacious: it is based on the claim that (1) Sylfradin's status influenced her to testify in favor of the defendants because of (2) a fear that (3) her landlord, Mr. O'Neil, might otherwise report her and cause her difficulty with the immigration officials if she did not. The insurmountable difficulty with this position is that there is no evidence or reasonable inference from the record to support it, or, indeed, to support any of the many assumptions upon which it is based. To be precise: there was no showing whatever that O'Neil (or anyone else) had any knowledge of or doubts about the facts underlying Sylfradin's lawful immigration status, much less that, if known, he would have reported it,[2] and much, much less that Sylfradin's testimony was influenced by a concern that he would. Since there is thus nothing left to support the claim that the immigration issue was in any way probative of Sylfradin's credibility, the testimony in question was not admissible to show bias. See State v. Pettis, 520 So.2d 250, 253-54 (Fla. 1988); Wasko v. State, 505 So.2d 1314 (Fla. 1987); A. McD. v. State, 422 So.2d 336 (Fla. 3d DCA 1982); Morell v. State, 297 So.2d 579 (Fla. 1st DCA 1974).
Instead it served only the plainly prejudicial purpose, which was eagerly exploited,[3] of disparaging the witness's character and thus, the acceptability of her testimony. Nelson v. State, 99 Fla. 1032, 128 So. 1 (1930); Wallace v. State, 41 Fla. at 547, 26 So. at 713; Weatherford v. State, 561 So.2d 629 (Fla. 1st DCA 1990); McClain v. State, 395 So.2d 1164, 1165 (Fla. 2d DCA 1981); see Loper v. Allstate Ins. Co., 616 So.2d 1055 (Fla. 1st DCA 1993); Dempsey v. Shell Oil Co., 589 So.2d 373 (Fla. 4th DCA 1991); see also Breedlove v. State, 580 So.2d 605, 609 (Fla. 1991) ("Evidence of bias may be inadmissible if it unfairly prejudices the trier of fact. Therefore, inquiry into collateral matters, if such matters will not promote the ends of justice, should not be permitted if it is unjust to the witness and uncalled for by the circumstances."); Mosley v. State, 616 So.2d 1129, 1130 (Fla. 3d DCA 1993) (same); Canales v. Compania de Vapores Realma, S.A., 564 So.2d 1212 (Fla. 3d DCA 1990); DeSantis v. Acevedo, 528 So.2d 461 (Fla. 3d DCA 1988); § 90.403, Fla. Stat. (1991). Because Sylfradin's *984 testimony was so critical, the improper evidence requires a new trial.[4]
Reversed and remanded for a new trial.
NOTES
[1] Specifically, it was alleged that, although ninety days of agricultural labor was legally required to obtain her immigration permit, Sylfradin had actually worked for some time less than that.
[2] The only speck of evidence introduced on this question is that after Sylfradin told O'Neil that the plaintiff was afraid of being deported as an illegal immigrant, he called the border patrol to verify her status. Obviously, this had nothing to do with Sylfradin.
[3] Counsel for appellee stated in rebuttal closing argument:

Well, quite obviously I don't mean anything disparaging about that but, in this case, her immigration status, the circumstances under which she came into this country are very, very important and the fact of the matter is, if she falsified her application for this special immigration status, she has a lot to worry about if somebody like Mr. O'Neil is going to go running to the immigration authorities, whether or not he threatened that or not.
The fact of the matter is that her immigration status being in doubt makes her testimony completely suspect.
[4] The defendant also claims error in the exclusion of proffered evidence of prior similar incidents in which serious burns resulted from "lucky baths." Because a new trial is required in any case, we do not decide whether these rulings alone constituted reversible error. We do indicate, however, in view of the exotic and unfamiliar nature of the practice, that the admission of the testimony, as helpful to the jury's understanding of the issues in the case, lies within the discretion of the trial judge at the retrial. See Public Health Found. for Cancer & Blood Pressure Research, Inc., 352 So.2d 877 (Fla. 4th DCA 1977), cert. denied, 361 So.2d 834 (Fla. 1978); Garmise v. State, 311 So.2d 747 (Fla. 3d DCA 1975), cert. denied, 429 U.S. 998, 97 S.Ct. 524, 50 L.Ed.2d 608 (1976); see also Lawrence v. Florida East Coast R.R., 346 So.2d 1012, 1015 (Fla. 1977).