693 So.2d 934 (1996)
Harold RIDLEY, et ux., Petitioners,
v.
SAFETY KLEEN CORPORATION, etc., Respondent.
No. 86280.
Supreme Court of Florida.
May 30, 1996.
Opinion Denying Rehearing March 27, 1997.
*935 William D. Hall, Jr. of Barrett, Hoffmann & Hall, Tallahassee, and Gordon D. Cherr of McConnaughhay, Roland, Maida & Cherr, P.A., Tallahassee, for Petitioners.
Francis J. Carroll, Jr. of Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Daytona Beach, for Respondent.
Jack W. Shaw, Jr. of Brown, Obringer, Shaw, Beardsley & DeCandio, Jacksonville, for Florida Defense Lawyers Association, Amicus Curiae.
Wendy F. Lumish and Paul L. Nettleton of Popham, Haik, Schnobrich & Kaufman, Ltd., Miami, for Product Liability Advisory Council, Inc., Amicus Curiae.
ANSTEAD, Justice.
We have for review a decision of the First District Court of Appeal passing upon the following question certified to be of great public importance:
IF EVIDENCE IS PRESENTED CONCERNING A VIOLATION OF SECTION 316.614, FLORIDA STATUTES, "THE FLORIDA SAFETY BELT LAW," AND THERE IS EVIDENCE THAT THE VIOLATION CONTRIBUTED TO THE INJURIES SUFFERED BY THE PLAINTIFF, SHOULD FLORIDA STANDARD JURY INSTRUCTION 4.11 (VIOLATION OF TRAFFIC REGULATION AS EVIDENCE OF NEGLIGENCE) BE GIVEN?
Safety Kleen Corp. v. Ridley, 666 So.2d 913, 916-17 (Fla. 1st DCA 1995) (on motions for rehearing and clarification). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the affirmative and approve the district court decision. We further hold that a claim that a plaintiff failed to wear a seat belt and that such failure was a contributing cause of plaintiff's damages should be raised as an affirmative defense of comparative negligence.

FACTS AND COURT PROCEEDINGS TO DATE
On August 31, 1992, Harold Ridley, while driving his pickup truck, and his daughter Tabitha, who was a passenger in the truck, were involved in an intersection collision with a service truck being operated by an employee of Safety Kleen Corporation.
On February 16, 1993, Mr. Ridley sued the Safety Kleen Corporation and Calhoun County. It was alleged that the Safety Kleen vehicle had proceeded into the intersection over the word "STOP" painted on the roadway, and that Calhoun County was responsible for the maintenance of traffic control devices at the intersection where the accident occurred. In its answer, Safety Kleen raised Mr. Ridley's failure to use his seat belt as an affirmative defense to Ridley's claim for damages. Safety Kleen also filed a counterclaim against Mr. Ridley for property damage and other losses sustained by Safety Kleen in the accident and a cross-claim against Calhoun County. At trial, Safety Kleen requested but was denied an instruction on a Florida traffic statute requiring motorists to wear seat belts. Ultimately, the jury returned a verdict in favor of the Ridleys. In the interrogatory verdict, the jury found Safety Kleen one hundred percent at fault for the accident. Neither Mr. Ridley nor Calhoun County was found comparatively negligent, and Mr. Ridley's failure to wear a seat belt was not found to have contributed to his injuries.
On appeal, the First District reversed and held that the trial court committed reversible error in refusing to give Safety Kleen's requested instruction on Florida's statutory *936 seat belt law. Safety Kleen Corp. v. Ridley, 666 So.2d 913, 915 (Fla. 1st DCA 1995). The court reasoned:
Because the jury was not told that violation of the seat belt statute constituted evidence of negligence, it was not adequately informed as to the law under all the circumstances. The requested instruction was not fairly covered by the other instructions and it was material to the issue in this case; thus, the refusal to instruct the jury as to this point cannot be considered harmless.
Id. (citation omitted). In response to several motions for rehearing and clarification, the First District issued a second opinion which (1) allowed the jury verdict to stand in Calhoun County's favor and dismissed it from this case, (2) upheld its initial reversal of the jury's verdict, and (3) certified the question of great public importance we have previously quoted. Safety Kleen Corp., 666 So.2d at 915-16.

LAW and ANALYSIS

Certified Question
We first directly address the certified question. We find Florida case law clearly supports the district court's conclusion that the trial court erred in failing to instruct the jury on the seat belt statute and the effect of its violation.[1]
Section 316.614, Florida Statutes (1995), provides in part:
(4) It is unlawful for any person:
(a) To operate a motor vehicle in this state unless each front seat passenger of the vehicle under the age of 16 years is restrained by a safety belt or by a child restraint device pursuant to s. 316.613, if applicable; or
(b) To operate a motor vehicle in this state unless the person is restrained by a safety belt.
(5) It is unlawful for any person 16 years of age or older to be a passenger in the front seat of a motor vehicle unless such person is restrained by a safety belt when the vehicle is in motion.
....
(10) A violation of the provisions of this section shall not constitute negligence per se, nor shall such violation be used as prima facie evidence of negligence or be considered in mitigation of damages, but such violation may be considered as evidence of comparative negligence, in any civil action.
§ 316.614(4), (5), (10), Fla.Stat. (1995). In turn, Florida Standard Jury Instruction (Civil) 4.11[2] provides:
Violation of [a traffic regulation] is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that a person alleged to have been negligent violated such a traffic regulation, you may consider that fact, together with the other facts and circumstances, in determining whether such person was negligent.
*937 It is well established in Florida that a violation of a traffic regulation ordinarily constitutes evidence of negligence, and, when there is evidence of such a violation, the jury should be instructed on the effect of such a violation on the issue of negligence. See, e.g., Seaboard Coastline R.R. v. Addison, 502 So.2d 1241 (Fla.1987); Robinson v. Gerard, 611 So.2d 605 (Fla. 1st DCA 1993); Sotuyo v. Williams, 587 So.2d 612 (Fla. 1st DCA 1991); City of Tamarac v. Garchar, 398 So.2d 889 (Fla. 4th DCA 1981); Menard v. O'Malley, 327 So.2d 905 (Fla. 3d DCA 1976). In Addison, this Court explained:
At issue here is respondent's alleged violation of a statute, section 316.1575(1)(c), part of the Florida Uniform Traffic Control Law. Standard Instruction 4.11 was the instruction that should have been given by the trial court. This instruction tracks the established rule of law that a violation of a traffic regulation is evidence of negligence. When there is evidence of such a violation a party is entitled to a jury instruction thereon. This is simply a specific application of the equally established rule of law that a party is entitled to have the jury instructed upon his theory of the case when there is evidence to support the theory.
....
... When the trial judge fails to read or paraphrase the statute and inform the jury that a violation of the statute is evidence of negligence, the jury is given no guidance on either the requirements of the statute or what effect a violation of the statute should have on its deliberations.
502 So.2d at 1242 (emphasis added) (citations omitted). Similarly, in Sotuyo, the First District pointedly declared:
[I]t cannot be presumed that the jury knows the statutory requirements or that the common sense of the jurors would dictate the appropriate behavior. The jury is entitled to guidance on the requirements of statutes and the effect a violation of a statute would have on its deliberations.
587 So.2d at 614. These holdings support a conclusion that the trial court erred in failing to inform the jury that a violation of the Florida traffic regulation mandating the use of seat belts constitutes evidence of negligence.
Section 316.614(10) of the seat belt statute may be somewhat confusing, but it expressly provides, consistent with the language of instruction 4.11, that "such violation [of the statute requiring the use of a seat belt] may be considered as evidence of comparative negligence in any civil action." From this discussion, two things are hopefully now clear: (1) Florida law requires the use of a seat belt, and (2) a violation of that law may be considered as evidence of negligence in a civil action.
We also agree with the district court that an instruction in the form of standard instruction 6.14, explaining to the jury that the use of a seat belt is an issue in the case, cannot act as a substitute for instruction 4.11 because they serve two different purposes. Standard instruction 4.11 advises the jury that a violation of the statute is evidence of, but not determinative of, plaintiff's negligence. Instruction 6.14, on the other hand, presents the ultimate issues to the jury of whether the plaintiff was comparatively negligent in failing to use a seat belt and, if so, whether and to what extent that negligence contributed to plaintiff's injuries.[3] Thus, the *938 refusal to instruct the jury on this point cannot be considered harmless. Robinson, 611 So.2d at 608.

Evolution of the Seat Belt Defense[4]
We also hold, consistent with the language of section 316.614(10), that the failure to wear a seat belt should be properly raised by alleging the failure and its contributing effect to a claimant's damages as an issue of comparative negligence. We acknowledge that there has been some confusion and misunderstanding as to the nature of the so-called seat belt defense and confusion as to the actions of this Court and the legislature on this issue. For that reason, we believe it may be helpful to review the development of the law on the use of seat belts.
The seat belt defense has been described as
an attempt to prove that the non-use of a functional and available restraint system by the plaintiff either caused or measurably worsened the plaintiff's injuries that resulted from the defendant's actions, and based on that non-use (even though the non-use preceded and did not cause or contribute to the accident), the plaintiff's recoverable damages should be barred or reduced.
Alvin S. Hyde, The Seat Belt Defense 5 (1985). This defense had been discussed and rejected in the district courts as early as 1966. See Brown v. Kendrick, 192 So.2d 49 (Fla. 1st DCA 1966).[5] We first approved the seat belt defense in Insurance Co. of North America v. Pasakarnis, 451 So.2d 447, 449 (Fla.1984).
Prior to Pasakarnis, we considered a number of issues regarding automobile safety and design, a manufacturer's liability, and negligence. See, e.g., Auburn Mach. Works Co. v. Jones, 366 So.2d 1167 (Fla.1979) (rejecting "patent danger" doctrine); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla.1976) (imposing strict liability against manufacturers); Ford Motor Co. v. Evancho, 327 So.2d 201 (Fla.1976) (see discussion, infra); Lincenberg v. Issen, 318 So.2d 386 (Fla.1975) (abolishing the no-contribution among tortfeasors rule); Hoffman v. Jones, 280 So.2d 431 (1973) (adopting doctrine of comparative negligence). These cases formed a backdrop for our subsequent consideration of the seat belt issue.
For example, in Evancho we held automobile manufacturers could be held liable in automobile collision cases for injuries which resulted from defects in design or manufacturing. Adopting the rationale of the Eighth Circuit Court of Appeals, we noted that the "intended use [of an automobile] cannot be carried out without encountering in varying degrees the statistically proved hazard of injury-producing impacts of various types." Evancho, 327 So.2d at 204 (quoting Larsen v. General Motors Corp., 391 F.2d 495, 501-02 (8th Cir.1968)). Further, we found that "[a] frequent and inevitable contingency of normal automobile use will result in collisions and injury producing impacts." Id. Based upon these findings, we imposed a duty on automobile manufacturers to use reasonable care in designing and manufacturing automobiles *939 to eliminate the risk of foreseeable injury from such impacts.

Pasakarnis
Richard Pasakarnis was injured when his vehicle was hit broadside by another vehicle, and he brought an action for damages. There was no claim that Pasakarnis caused the accident. However, the defendants alleged that had Pasakarnis been using his seat belt, his bodily injuries would have been substantially reduced or prevented. The trial court and district court refused to recognize a "seat belt defense" but certified the question to this Court. However, "logically and consistently" applying the principles set forth in Evancho, this Court quashed the district court decision and held for the first time that the seat belt defense may be raised by a defendant in Florida. Pasakarnis, 451 So.2d at 453. Citing a study from the United States Department of Transportation as well as case authority from numerous jurisdictions, we found that "[t]he seat belt has been proven to afford the occupant of an automobile a means whereby he or she may minimize his or her personal damages prior to the occurrence of the accident." Id. (citing Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974)) (emphasis added). We remanded the case for a new trial on the issues of whether and to what extent the plaintiff's damages should be reduced as a result of his failure to wear a seat belt.
In approving a seat belt defense, we considered three possible approaches:
Those jurisdictions adopting the "seat belt defense" have considered three different approaches: (1) plaintiff's nonuse is negligent per se; (2) in failing to make use of an available seat belt, plaintiff has not complied with a standard of conduct which a reasonable prudent man would have pursued under similar circumstances, and therefore he may be found contributorily negligent; and (3) by not fastening his seat belt, plaintiff may, under the circumstances of a particular case, be found to have acted unreasonably and in disregard of his or her best interests and, therefore, should not be able to recover those damages which would not have occurred if his or her seat belt had been fastened.
Id. We declined to adopt the rule that a plaintiff's failure would be negligence per se, because, at that time, "Florida [did] not by statute require the use of available seat belts." Id. We also rejected the second approach as well "because contributory negligence is applicable only if plaintiff's failure to exercise due care causes in whole or in part the accident rather than enhancing the severity of the injuries." Id. at 453-54. In the end, we adopted the third approach.
In our opinion, we also noted that "[a] different situation would be presented if the defendant alleged and proved that the plaintiff's negligent failure to wear a seat belt was a contributing cause of the accident." Id. at 454 n. 3. Unfortunately, this language has been the source of some confusion and has been cited by some to mean that evidence of a plaintiff's failure to use a seat belt is only admissible if the failure can be shown to be a cause of the initial automobile accident.[6] However, as the authors of one commentary have observed:
Such an interpretation ignores the second "accident" which is almost inevitable when an automobile occupant is not using a seat beltthat of the occupant's body's collision with the inside of the automobile. While nonuse of a seat belt may not be evidence of comparative negligence in causing the first accident, it most certainly is evidence of comparative negligence in causing the second, as is made clear by the Pasakarnis Court's adoption of the third approach[:]
Nonuse of the seat belt may or may not amount to a failure to use reasonable care on the part of the plaintiff. Whether it does depends on the particular circumstances of the case. Defendant has the burden of pleading and proving that the plaintiff did not use an available and operational seat belt, that the plaintiff's failure to use the seat belt was unreasonable under the circumstances, *940 and that there was a causal relationship between the injuries sustained by the plaintiff and the plaintiff's failure to buckle up. If there is competent evidence to prove that the failure to use an available and operational seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the jury should be permitted to consider this factor, along with all other facts in evidence, in deciding whether the damages for which defendant may otherwise be liable should be reduced.
George N. Meros, Jr. & Mary W. Chaisson, The Seat Belt Defense is Alive and Well Under Amended Section 316.614, 14 Trial.Advoc.Q. 9, 10 (Jan.1995) (quoting Pasakarnis, 451 So.2d at 454).

1986 Safety Belt Law
In 1986, following our decision in Pasakarnis, the Florida Legislature passed the Florida Safety Belt Law.[7] Ch. 86-49, § 2, Laws of Fla. (codified at § 316.614(1)-(10), Fla. Stat. (Supp.1986)). The law's enactment also followed the enactment of Federal Motor Safety Standard 208, which was amended in 1984. See 49 C.F.R. § 571.208 (1994) (amended in 1984 by 49 Fed.Reg. 29010).[8] The Florida Safety Belt Law makes it unlawful for a driver to operate a vehicle or for a person sixteen years of age or older to be a passenger in the front seat unless restrained by a safety belt. A front seat passenger under sixteen years of age must wear a safety belt or a child restraint device. § 316.614(4), (5), Fla.Stat. (1995).
Echoing some of the language used in Pasakarnis, subsection (10) of the newly enacted law stated: "A violation of the provisions of this section shall not constitute negligence per se, nor shall such violation be used as prima facie evidence of negligence in any civil action." § 316.614(10), Fla.Stat. (Supp. 1986). The statute did not specify how evidence of failure to use a seat belt was to be used in a civil action for damages. The subsection's lack of direction combined with this Court's ambiguous reference to contributory negligence in Pasakarnis led to some concern that a jury might erroneously take a plaintiff's failure to use a seat belt into consideration twicefirst in apportioning fault under the comparative negligence doctrine, and later in considering the issue as a failure to mitigate damages. Meros & Chaisson, supra, at 10.[9] These concerns and the continuing debate over the use of seat belts and the effect of their nonuse in litigation resulted in the legislature's reexamination of the issue in 1990.

1990 Amendment to Section 316.614(10)
An amendment initially proposed in 1990 would have added two important phrases to *941 subsection (10) of section 316.614. For example, an early draft provided:
(10) A violation of the provisions of this section or a person's failure to use a seat belt does shall not constitute negligence per se, nor may shall such violation be used as prima facie evidence of negligence or considered in mitigation of damages in any civil action.
Fla.S.Comm. on Judiciary-Civil, PCB 1770 (1990). As proposed, these changes seemingly would have barred the use of the seat belt defense, whether common law or statutory, in a civil action for damages. Significantly, the first of the two proposed additions would have extended the "mitigation of damages" prohibition beyond a "violation of the provisions of this [statutory] section" to include failure to use a seat belt.
However, when the amendment was actually adopted, this sweeping prohibition was deleted. Instead, the amended section provided:
A violation of the provisions of this section shall not constitute negligence per se, nor shall such violation be used as prima facie evidence of negligence or be considered in mitigation of damages, but such violation may be considered as evidence of comparative negligence, in any civil action.
Ch. 90-119, § 24, at 382, Laws of Fla.[10] The amendment of section 316.614 in 1990 has led some to conclude that the legislature meant to do away with the use of the seat belt defense in civil actions as established in Pasakarnis. However, our review of the amended statute and its legislative history leads us to conclude that the statute was not intended to alter the Pasakarnis rule. Rather, we believe that the 1990 amendment was enacted to clarify and standardize the manner in which a plaintiff's failure to use a seat belt was to be utilized in a civil action, and to preclude the possibility that an injured plaintiff would be penalized twice for failing to use an available seat belt.[11] With the amendment in 1990, the legislature achieved this end by limiting the use of evidence of a plaintiff's failure to use a seat belt to only one issuecomparative negligence.[12]

*942 Case Law

Consistent with this legislative activity, a number of district court decisions have also recognized that the seat belt defense may be appropriately analyzed as an issue of comparative negligence. See, e.g., First Southern Ins. Co. v. Block, 567 So.2d 960, 961 (Fla. 4th DCA 1990); Knapp v. Shores, 550 So.2d 1155 (Fla. 3d DCA 1989), review denied, 563 So.2d 634 (Fla.1990); Burns v. Smith, 476 So.2d 278 (Fla. 2d DCA 1985); see also Meros & Chaisson, supra, at 12-14 (cases discussed therein).
In Parker v. Montgomery, 529 So.2d 1145 (Fla. 1st DCA), review denied, 531 So.2d 1354 (Fla.1988), the First District held that the concept of avoidable consequences or mitigation of damages should be subsumed within the doctrine of comparative negligence as adopted in Florida. Judge Ervin, writing for the court, explained some of the difficulties the courts have had in sorting out the relationship between the legal doctrines of "mitigation of damages" or "avoidable consequences" and the doctrines of contributory and comparative negligence. Id. at 1147. He noted that as a rule a plaintiff's contributory or comparative negligence occurs either before or at the time of the wrongful act or omission of the defendant, whereas the plaintiff's fault in failing to mitigate damages usually involves conduct occurring after the wrongful act of the defendant. Id. For example, a plaintiff's failure to mitigate the effects of a broken leg by failing to obtain proper medical care after the accident may lessen his recovery for the subsequent aggravated condition of the leg. W. Page Keeton et al., Prosser and Keeton on the Law of Torts, § 65, at 458 (5th ed.1984). This chronological distinction sometimes makes it difficult to see the similarities in the doctrines and their essential purpose and effect.[13]
Of course, a more serious obstacle to combining the doctrines prevails in states where comparative negligence has not been adopted and contributory negligence still acts as a complete bar to a plaintiff's cause of action. Since mitigation would only prevent recovery of those post-accident damages that could have been reasonably avoided, it could not be treated as an issue of contributory negligence. Parker, 529 So.2d at 1147.
However, as Judge Ervin pointed out in Parker, jurisdictions that have adopted comparative negligence are not faced with these potential inconsistencies. Id. Other commentators have agreed:
Implicit within this comparative equation [of "pure" comparative negligence] is the principle that each person should bear the responsibility for injuries due to his or her negligence. Perhaps less obvious but still encompassed by the equation is the concept that every individual must bear the duty of taking affirmative steps to prevent his own injury. Thus, the subject of seat belts is of some consequence for both plaintiff and defendant under the theory of comparative negligence.
John A. Hoglund & A. Peter Parsons, Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law, 50 Wash. L.Rev. 1, 1-2 (1974). After surveying cases in all of the states, one author has commented that "the application of the doctrine of comparative negligence to the [nonuse of a seat belt] seems at times very nearly indistinguishable from the application of a mitigation of damages theory." C. Clifford Allen, III, Annotation, Nonuse of Seat Belt as Failure to Mitigate Damages, 80 A.L.R.3d 1033, 1036 (1977).
The logic of treating these two concepts alike is further supported by the fact that both comparative negligence and avoidable consequences rest upon the same fundamental policy. That is, both make recovery dependent upon the plaintiff's proper care for the protection of her own interests, and both *943 require of her only the standard of the reasonable person under the circumstances. Keeton, supra, § 65, at 458. Consistent with this view, the Restatement of Torts makes no distinction between a plaintiff's pre-accident and post-accident conduct for the purpose of apportioning damages:
Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.
Restatement (Second) of Torts § 465 cmt. c. (1965).
Lastly, if one conceptualizes the whole "accident" as two separate, although interrelated eventsthe collision of the one vehicle with another vehicle and the collision of the unbelted occupant with the inside of the vehiclethe comparative negligence/mitigation of damages dichotomy dissolves. See Parker, 529 So.2d at 1149; Meros & Chaisson, supra, at 14; cf. Pasakarnis, 451 So.2d at 453 ("[A]utomobile collisions are foreseeable as are the so-called `second collisions, with the interior of the automobile.").
Because we have long ago adopted the doctrine of comparative negligence, we agree with Parker and other authorities discussed herein that treating the seat belt issue as one of comparative negligence serves to simplify resolution of the single issue of whether a person's failure to use a seat belt has contributed to her injuries. Hence, we hold that this issue should ordinarily be raised by an affirmative defense of comparative negligence.
We also conclude that instruction 6.14 should no longer be used when a seat belt defense is pled as an affirmative defense. For example, the seat-belt statute makes no exception to its strict terms as to whether the vehicle is equipped with an available and fully operational seat belt. See § 316.614(4), (5), Fla.Stat. (1995).[14] Nor is the failure to use a seat belt to be conceptualized any longer as a "mitigation of damages" issue as discussed in the jury instruction committee's comment to instruction 6.14.
In the future, trial courts should give the jury Standard Jury Instruction (Civil) 3.8a (contributory negligence), 4.11 (violation of traffic regulation evidence of negligence), and 6.1(c) (when there is an issue of contributory negligence), but not 6.14, since the seat belt issue is to be treated as part of the comparative negligence issue.[15]

Calculation of Damages
Finally, we consider the issue of how trial courts should reduce a plaintiff's damages when he is found to be negligent in failing to wear a seat belt and has also been found to be negligent in contributing to the cause of the accident in which he was injured. The current practice reduces the plaintiff's award in two steps.[16] The plaintiff's total award is *944 first reduced by his or her comparative fault in causing the accident. This reduced sum is then reduced a second time by deducting the percentage of the plaintiff's damages that were caused by the failure to wear a seat belt.[17]
This practice is inconsistent with section 768.81(2), Florida Statutes (1995), and our holding today. As discussed earlier, we have concluded that the failure to wear a seat belt may be considered as evidence of comparative negligence. Of course, a plaintiff may also be found to have been comparatively negligent if she was partially at fault in causing an accident. There is no reason to treat these two examples of comparative negligence separately on a verdict form.
According to section 768.81(2), the percentage of plaintiff's damages that is attributable to plaintiff's negligent conduct (i.e., plaintiff's total comparative negligence) should be used to proportionately reduce the plaintiff's recovery. This single percentage should also be reflected only once on the verdict form. The jury should consider both the plaintiff's negligence in operating the vehicle and the failure to use a seat belt, if applicable, when calculating this percentage. Accordingly, when the jury is considering whether the plaintiff was negligent, the jury should be instructed to calculate a single total percentage for that comparative negligence whether it involves a seat belt issue or another issue of comparative negligence. This calculation of the percentage of comparative negligence should then be reflected on the verdict form and used to reduce the total jury award in a single calculation.[18]
We answer the certified question in the affirmative and approve the district court decision.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.

CLARIFIED ON DENIAL OF REHEARING
PER CURIAM.
We agree with the assertion by the petitioners that the only issues requiring a retrial are the claim by the Ridleys that all of Mr. Ridley's injuries were caused by Safety Kleen's negligence and the claim by the respondent, Safety Kleen, that Mr. Ridley was comparatively negligent in not wearing a seat belt. The Ridleys sued Calhoun County and Safety Kleen. Safety Kleen counterclaimed against the county and Mr. Ridley. Safety Kleen lost the counterclaim, and that claim need not be retried.
On the Ridleys' claim, the county was exonerated and Safety Kleen was found 100 percent at fault in causing the accident. The jury also found that Mr. Ridley's failure to wear a seat belt did not contribute to his injuries. Although we have held that the trial court erred in failing to give an instruction on the effect of Mr. Ridley's alleged *945 violation of a traffic statute requiring the use of a seat belt, we see no need for a retrial on the claim against the county or Safety Kleen based upon their alleged negligence in causing the underlying accident. Based upon a verdict on the negligence of the parties unaffected by the seat belt issue, the Ridleys are entitled to a preemptory instruction on Safety Kleen's negligence as to the accident and to the absence of negligence on Mr. Ridley's part as to the accident. Accordingly, any retrial should be limited to the issue of the alleged comparative negligence of Mr. Ridley in failing to wear a seat belt, and, if he is found to be comparatively negligent, the issue of the percentage of fault attributable to Mr. Ridley in causing his injuries and the percentage of fault attributable to the negligence of Safety Kleen in causing such injuries. A special interrogatory verdict should be used to facilitate the presentation of these issues to the jury.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Although the record is somewhat confusing as to whether the respondent preserved this error for review, we concur with the district court's finding that this error was indeed preserved for review. See Safety Kleen Corp., 666 So.2d at 914 & n. 1. It appears that the trial court denied an instruction on the seat belt traffic statute based upon the plaintiffs' argument that the standard instruction concerning the seat belt defense was sufficient and precluded the giving of an additional instruction on the traffic statute. The following exchange took place at the charge conference:

[PLAINTIFFS' COUNSEL]: 316.614, it's my objection. My first objection is that you cannot instruct the jury twice on the same thing because it overly emphasizes an issue to the jury. There is a standard instruction on seat belt usage.
THE COURT: Can you tell me where it is?
[PLAINTIFFS' COUNSEL]: It should be the last one.
[SAFETY KLEEN'S COUNSEL]: 6.14.
[PLAINTIFFS' COUNSEL]: The law is clear if there is a standard that is what the Supreme Court has determined is necessary to instruct the jury about under the circumstances. To give something over and above the standard there has to be some cause for it and they have set out these standard instructions.
THE COURT: I will agree. I am going to deny this, of course your objection is certainly noted for the record.
[2] A committee note states that the Standard Jury Instructions Committee takes no position on the effect of section 316.614(10), Florida Statutes, on Florida Standard Jury Instruction (Civil) 6.14.
[3] Standard Jury Instruction 6.14 reads as follows:

An additional question for your determination on the defense is whether some or all of (claimant's) damages were caused by [his] [her] failure to use a seat belt.
[The automobile occupied by (claimant) was equipped with an available and fully operational seat belt.]
The issues for your determination on this question are whether the greater weight of the evidence shows [that the automobile occupied by (claimant) was equipped with an available and fully operational seat belt,] that (claimant) did not use the seat belt, that a reasonably careful person would have done so under the circumstances, and that (claimant's) failure to use the seat belt produced or contributed substantially to producing the damages sustained by claimant.
If the greater weight of evidence does not support (defendant) on each of these issues, then your verdict on this question should be for (claimant). If the greater weight of the evidence supports (defendant) on these issues, you should determine what percentage of (claimant's) total damages were caused by [his] [her] failure to use the seat belt.
[4] We recommend to the reader the discussion of this issue by Gary W. Flanagan, The Seat Belt Defense: Has It Become Unbuckled?, 70 Fla.B.J. 30 (Jan.1996). We have borrowed liberally from that article in our discussion herein.
[5] See also Lafferty v. Allstate Ins. Co., 425 So.2d 1147, 1148 (Fla. 4th DCA 1982) (holding evidence of motorist's failure to wear available seat belt was inadmissible both as defense on liability and as limitation on damages), quashed, 451 So.2d 446 (Fla.1984); Selfe v. Smith, 397 So.2d 348, 351 (Fla. 1st DCA) ("We need not advance the conventional, if troublesomely unconvincing, arguments against reducing the damages to be awarded in a comparative negligence state to one whose injury was more serious because he did not buckle an available seat belt."), review denied, 407 So.2d 1105 (Fla.1981); Quinn v. Millard, 358 So.2d 1378, 1384-85 (Fla. 3d DCA 1978) (refusing to rule on seat belt defense issue because record did not contain sufficient evidence that plaintiff would have sustained less serious injuries had he been wearing his seat belt at time of collision); Chandler Leasing Corp. v. Gibson, 227 So.2d 889, 890 (Fla. 3d DCA 1969) (holding where contributory negligence was not pleaded and no instructions on issue of contributory negligence in failing to use seat belt were requested, refusal of trial judge to permit argument to jury on failure of plaintiff wife to use seat belt was not error).
[6] As the source of this language in Pasakarnis, we must share the blame for some of the ensuing confusion as to the law on the use of seat belts.
[7] Besides our decision in Pasakarnis, the State of Florida had previously attempted to promote seat belt use through a child restraint act, ch. 82-58, § 1, Laws of Fla. (1982) (codified at § 316.613(1)-(4), Fla.Stat. (1985)), and an administrative rule requiring state employees to wear seat belts when using a motor vehicle on state business, Fla.Admin.Code r. 13B-3.12 (1984). Additionally, by 1986, 26 other jurisdictions had enacted similar statutes. John G. Van Laningham, Comment, The Making of the 1986 Florida Safety Belt Law: Issues and Insight, 14 Fla.St.U.L.Rev. 685, 685 (1986).
[8] As one commentator has stated, "[w]hile drafting the seat belt law, Pasakarnis loomed large. The legislature faced a choice: should it curb a little `judicial policy making' or concur with the state's highest court?" Laningham, supra, at 690. The Federal Motor Vehicle Safety Standard 208 was also influential. Standard 208 requires automobile manufacturers to install automatic protection systems in passenger cars for sale in this country in accordance with a schedule designed to increase the percentage of automobiles so equipped. However, the regulation gives states an opportunity to preclude the introduction of automatic protection systems by adopting mandatory seat belt laws which meet certain criteria.
[9] In American Automobile Ass'n v. Tehrani, 508 So.2d 365 (Fla. 1st DCA 1987), the First District addressed the question of whether section 316.614, Florida Statutes (Supp.1986), "establish[ed] and control[led] the parameters of the Pasakarnis `seat belt defense.'" Id. at 370 (on rehearing). In answering the question, the court stated that, since the common law seat belt defense was viable in Florida prior to the safety belt law, "as a matter of logic" it continued to survive after the passage of the 1986 Safety Belt Law. Id. The court went on to cite the 1986 Journal of the Florida House of Representatives, which included a specific statement of legislative intent not to alter the Pasakarnis rule. Id.
[10] That the amendment in its final form was not as sweeping as the earlier draft may have been due, at least in part, to the economic analysis conducted by the House and Senate staffs. For instance, in the final staff analysis generated by the House Insurance Committee, the committee cited a University of Kentucky study which concluded that the average cost per patient involved in an accident not wearing a seat belt was 4.4 times more than the cost of those using seat belts. Fla.H.R.Comm. on Ins., CS for SB 2670 (1990) Staff Analysis 13 (final June 21, 1990). The Kentucky study also found that while 98 percent of the belted victims were treated and released, 21 percent of the unbelted victims were admitted to the hospital and their average stay was 5.2 times longer. Citation to the study indicates a strong public policy concern that seat belt use be encouraged. The Senate Staff Analysis came to similar conclusions. In its analysis, the Senate staff found that the sweeping amendment initially proposed to subsection (10) of section 316.614 would not only increase recoveries by plaintiffs, but would also increase the cost of automobile insurance by denying defendants and their insurance companies the use of the seat belt defense to mitigate damages. Fla.S.Comm. on Judiciary-Civil, CS for SB 1770 (1990) Staff Analysis 2 (Apr. 25, 1990).
[11] Meros & Chaisson, supra, at 11. Senator Robert Johnson, in a Senate Judiciary Civil Committee Meeting claimed that accident victims were taking a "double hit" under the 1986 version of the statute. Fla.S.Comm. on Commerce, tape recording of proceedings (Apr. 25, 1990) (available at Florida Dep't of State, Div. of Archives, Tallahassee, Florida). We concede that some of the language from the Pasakarnis opinion may have contributed to this concern. See supra note 6. Citing to the Tehrani decision, a Senate staff analysis concluded that the common law seat belt defense rule had survived the enactment of section 316.614 and operated in conjunction with the statute. Fla.S.Comm. on Judiciary-Civil, CS for SB 1770 (1990) Staff Analysis 1 (Apr. 25, 1990).
[12] Despite our conclusion of legislative intent to amend subsection (10) so as to avoid potential double penalties to plaintiffs, there are those who continue to assert that the amendment's purpose is to exclude evidence of the use of a seat belt and to bar a jury's consideration of the seat belt statute. Interestingly, this continuing controversy was predicted by the revision's opponents. See Meros & Chaisson, supra, at 12 (citing cases in footnote 19). We acknowledge that the confusion appears to have resulted in part from the distinction we attempted to make in Pasakarnis between a plaintiff's comparative negligence in causing the first collision (i.e., that of the plaintiff's vehicle with another vehicle or obstruction), and the same plaintiff's potential comparative negligence in causing a second collision (i.e., that of the plaintiff's body with the inside of the vehicle). Id.
[13] In adopting the seat belt defense in Pasakarnis, we relied upon a New York Court of Appeals opinion which recognized:

We concede that the opportunity to mitigate damages prior to the occurrence of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation [of] damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages prior to the accident.
Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 921, 323 N.E.2d 164, 168 (1974).
[14] As discussed earlier herein, despite the strict language in the seat belt statute, the legislature did not make the failure to wear a seat belt negligence per se or prima facie evidence of negligence. § 316.614(10). Instead, the failure to wear a seat belt is only "evidence of comparative negligence." Id. Accordingly, we conclude a jury may still consider the availability or operability of a seat belt in its broader negligence analysis since it is part of the circumstances upon which the jury may decide whether the plaintiff's omission was reasonable. See Bulldog Leasing Co. v. Curtis, 630 So.2d 1060, 1064 (Fla. 1994).
[15] Cases in which instruction 6.14 has been given should not be affected by this opinion.
[16] Most likely, trial courts derived this practice from language we used in Pasakarnis:

If the jury returns a verdict for the plaintiff, finds that plaintiff's negligence was a contributing cause of the accident, and finds that plaintiff's failure to wear an available and fully operation seat belt produced or contributed substantially to producing at least a portion of plaintiff's damages, then the trial court in its final judgment should first reduce the total amount of damages by the percentage of the plaintiff's contributory negligence and then reduce this amount by the percentage attributable to plaintiff's failure to wear the seat belt.
451 So.2d at 454 (emphasis added); see also Fed.Std.Jury Instr. (Civ.) 6.14 n. 3. We recede from that portion of Pasakarnis insofar as it is inconsistent with our holding today.
[17] During the charge conference when the parties were discussing the appropriate verdict form, the following exchange took place:

THE COURT: Let me ask you this, and this hasn't been raised, take for example that they came up with $200,000 in damages that Mr. Ridley suffered and they determined over here on the first page [of the verdict form] that he was 25-percent negligent, and then they came over here on the last page and determined that his seat belt damages caused 50-percent, you will take 25-percent of $200,000 and that leaves the $150,000 and then you will take 50-percent away from that and leave him with 75?
[Safety Kleen's Counsel]: Yes, sir.
THE COURT: Everybody agrees with that?
[Calhoun County's Counsel]: That's my understanding.
[Plaintiffs' Counsel]: Yes.
[Counterdefendant's Counsel]: Yes.
[18] For example, under the current practice if plaintiff received a jury award of $100,000 the jury might find plaintiff 10% at fault for causing the accident and that 10% of plaintiff's damages were caused by the failure to wear a seat belt. Under this scheme, plaintiff's total award would first be reduced to $90,000 ($100,000 reduced by 10%) and then reduced again to arrive at the final award of $81,000 ($90,000 reduced by 10%). Under our holding today, comparative negligence will include a plaintiff's conduct in causing the accident and in failing to protect himself by wearing a seat belt. Consequently, under the hypothetical, the jury would return a single percentage of 20% for plaintiff's comparative negligence. When this percentage is applied to the jury award, plaintiff's recovery would be reduced by $20,000, for a net recovery of $80,000.