766 So.2d 1175 (2000)
Jonathan JACOBS, Appellant,
v.
Christopher WESTGATE and Russell Lyons, Appellees.
No. 3D99-1473.
District Court of Appeal of Florida, Third District.
September 13, 2000.
*1177 Goldberg & Hirsh; I. Richard Jacobs; Lauri Waldman Ross, Miami, for appellant.
Adams & Adams, Miami; Gallagher & Howard and Betsy E. Gallagher, Tampa; Joel Lumer, Miami, for appellees.
Before GERSTEN, SHEVIN and SORONDO, JJ.
PER CURIAM.
Jonathan Jacobs appeals the trial court's Amended Final Judgment. We reverse.
Jacobs sued his landlord, Christopher Westgate and a neighbor, Russell Lyons. He alleged that he and Westgate lived together in Westgate's house, pursuant to an oral lease agreement, and that the lease was in full force and effect on April 6, 1995. On that date, Jacobs returned to the residence and found himself locked out and his personal property thrown into the street. He initially sued for 1) wrongful eviction; 2) violation of section 83.67, Florida Statutes (1997); 3) conversion; and 4) negligence. Westgate and Lyons answered asserting affirmative defenses of comparative negligence and/or failure to mitigate damages and a counterclaim for non-payment of rent. Jacobs' wrongful eviction claim was voluntarily dismissed, with Westgate withdrawing his counterclaim as a result of the dismissal. The case then proceeded to a jury trial on Jacobs' negligence claim against both defendants.
*1178 At trial, Jacobs testified to the following: On March 29, 1995, Westgate handed him a piece of paper that Westgate had just typed on his computer. This paper was a postdated document that alleged to be dated fifteen days earlier and gave Jacobs until the next day to quit the premises. Jacobs immediately called his attorney. The parties decided they did not want to get any lawyers involved, so Jacobs informed Westgate that he had a new lease and would be moving out in two weeks. On April 6, 1995, immediately after Jacobs left for work in the morning, Westgate summoned his neighbor, Lyons, and told him that Jacobs' belongings were taking up too much space in the garage. Westgate told Lyons that he wanted to move Jacobs' personal property out of the house so that Jacobs could not get back in. Together, they moved all of Jacobs' belongings into the street where the garbage was ordinarily left and covered it with a tarp. Westgate then changed the garage door code as well as all of the locks to the house.
Jacobs came home a few hours later to discover his belongings on the street. He asked Westgate to move his property back into the garage because it was about to start raining. Westgate refused, but offered him a telephone to call someone.
Jacobs then telephoned the police. The police told him he could either get an emergency injunction to get back into the house or he could take it up in court later and move his property. After the police left, Jacobs went to a nearby mall to call a moving company. He then drove back to Westgate's house.
Westgate testified at trial that Jacobs made two or three additional trips to the mall to call the movers. He further testified that either he or Lyons remained at the house during the time after Jacobs' property was moved out of the house until the time it was taken away by the movers who arrived at approximately 1:30 p.m.
Westgate further testified that it started to drizzle when the movers arrived, while Jacobs testified it had been pouring for some time. Westgate gave the movers a check for $750, and they piled Jacobs' property into the moving truck.
Jacobs testified as to the value of the property he lost. He said that the total value of all his property lost or damaged was $175,000. He lost $150,000 of property completely, with salvaged items totaling approximately $25,000 which he kept in a warehouse. The damaged or lost property included clothing, stereo equipment, jewelry, antiques, cameras and photograph equipment, paintings, cash and all of Jacobs' comic books, baseball cards, football cards and rare camera collection.
At the conclusion of the defense's case, Jacobs moved for a directed verdict on the issue of Westgate's and Lyons' negligence, as well as the defense of "comparative negligence." The trial court denied his motions.
Over Jacobs' further objections, the trial court instructed the jury on the defense of mitigation of damages in addition to the defense of comparative negligence. Jacobs also objected to the defendants' proposed verdict form, which treated comparative negligence and mitigation of damages as separate defenses, urging that the defense of mitigation was subsumed in comparative negligence and that it was unfair to permit the defense two separate attempts at a verdict reduction. The court overruled these objections, accepting the defense argument that these were separate issues.
The case was then submitted to the jury. As relevant to our discussion, the jury first found that Westgate and Lyons were negligent and that their negligence was the cause of Jacobs' damages. The jury went on to find that Westgate was 99% negligent, and Lyons was 1% negligent; that the total amount of Jacobs' damages were $60,000; and that Jacobs failed to mitigate his damages in the amount of $47,000.00. Thus, the net amount of damages was $13,000.00
*1179 Jacobs renewed his motions for directed verdict on both liability and comparative negligence. Jacobs also moved for a new trial asserting that the defendants' violation of the court's in limine order, by adducing bad character evidence, was solely to prejudice the jury and to minimize the amount of his loss. Jacobs further raised the submission of the case to the jury on erroneous instructions and verdict forms. The trial court denied these motions, and after amending the judgment to add prejudgment interest, entered judgment in Jacobs' favor for $16,964.81.
On appeal, Jacobs cites three grounds for reversal. First, Jacobs contends that he was entitled to a directed verdict on the issue of liability and the defense of comparative negligence. Next, Jacobs contends that the case was submitted to the jury on erroneous instructions and an erroneous verdict form. Finally, Jacobs maintains that the admission of bad character evidence on an irrelevant defense served no purpose but to prejudice the jury.

Liability and Comparative Negligence Defense Issues
With regard to Jacobs' contention that he was entitled to a directed verdict on the issue of liability and the defense of comparative negligence, we agree.
In negligence cases, motions for directed verdict should be treated with special caution because it is the function of the jury to weigh and evaluate the evidence. See Pascale v. Federal Express Corp., 656 So.2d 1351, 1353 (Fla. 4th DCA 1995). However, "[w]here reasonable persons can come to but one possible conclusion, issues of negligence become questions of law and should not be submitted to the jury." Borenstein v. Raskin, 401 So.2d 884, 886 (Fla. 3d DCA 1981). Under comparative fault principles, a plaintiff may have his judgment against any of the parties who wronged him, and if a single defendant is shown to have negligently caused injury, a directed verdict against him is proper. See Stresscon Int'l, Inc. v. Helms, 390 So.2d 139, 142 (Fla. 3d DCA 1980).
The law is clear that where a plaintiff is free of fault, he may move for a directed verdict on the issue of comparative negligence in addition to the issue of the defendant's liability. See Valdes v. Faby Enters., Inc., 483 So.2d 65 (Fla. 3d DCA 1986). Where there is no evidence tending to prove a plaintiff's comparative negligence, the issue should be taken from the jury. See Florida Ass'n of Workers for the Blind, Inc. v. Guillaume, 618 So.2d 275 (Fla. 3d DCA 1993).
Regarding the issue of the defendants' negligent care of Jacobs' property, the record reflects that the evidence of negligence in this case was overwhelming and reasonable people could not differ. Westgate admitted at trial that he decided to move Jacobs' belongings out of his house on the evening of April 5th, and that he told Lyons but did not tell Jacobs. Instead, Westgate waited for Jacobs to leave the house before he began moving the personal property. He admitted that he misled Jacobs regarding why he was not going to work that day. Westgate had no court order and no legal authority to move Jacobs' property out. He knew that Jacobs' property could be stolen because he had warned Jacobs previously about this risk. Westgate further testified that he knew rain showers could happen very quickly in South Florida. When rain began to threaten and both Jacobs and the police urged Westgate to store Jacobs' property temporarily so nothing further would be damaged, Westgate refused.
Lyons admitted that he had no right to move Jacobs' property out, that he knew it was wrong and told Westgate so, but argued that he was just helping a friend. Lyons conceded his own negligence when he testified that he knew what he was doing was negligent and improper when he did it.
In light of the foregoing evidence, we agree with Jacobs that there is no view of *1180 the evidence from which the jury could have returned a verdict entirely in either defendant's favor. Thus, the trial court erred in failing to grant Jacobs' motion for directed verdict on the issue of liability and, as Jacobs posits, all that entails. This means that Jacobs should have received a jury instruction that as a matter of law, these defendants were liable and the only issue left for the jury to decide was the amount of damages. See Fla. Stand. J. Instr. (Civil) 3.1(d).[1]
Regarding the defense of comparative negligence, we agree with Jacobs that the doctrine of comparative negligence subsumes the concept of mitigation of damages. See Ridley v. Safety Kleen Corp., 693 So.2d 934 (Fla.1996). Accordingly, the defendants had the burden of proving the defense of comparative negligence. See Florida Ass'n of Workers for the Blind, Inc. v. Guillaume, 618 So.2d 275 (Fla. 3 DCA 1993). Because the defendants' intentions and actions regarding the disposal of Jacobs' property were actively concealed from him, Jacobs could not be comparatively negligent, as a matter of law. We therefore agree with Jacobs that he was entitled to a directed verdict on this defense. The record clearly establishes that Westgate made no plans for movers to take possession of Jacobs' property, that it was just luck that Jacobs came home earlier than expected on the day in question to discover what defendants did, and that he was presented with an emergency situation. The defendants, who had the burden of proof to establish this defense, cited to no evidence that Jacobs could have gotten movers to recover his personal property any earlier than he did. In short, the defendants did not carry their burden. See Coulter v. American Bakeries Co., 530 So.2d 1009 (Fla. 1st DCA 1988); see also Cuadros v. Carnival Cruise Lines, Inc., 604 So.2d 861 (Fla. 3d DCA 1992).
We cannot agree with defendants that the failure to direct a verdict on the key issues in this case was harmless. Regarding the issue of liability, the granting of a directed verdict motion requires that the jury be instructed differently. The plaintiff is entitled to preemptive instruction 3.1(d), Florida Standard Jury Instruction (Civil), as previously discussed.
In addition, when a verdict is directed on the defense of comparative negligence, the jury gets no instruction on the issue. Here, the jury received no preemptive instruction and two instructions on comparative negligence, one on the defense itself and a second on mitigation. The jury was thus instructed on issues that should never have been before it. We cannot conclude that this was not harmless. See Wal-Mart Stores, Inc. v. Rogers, 714 So.2d 577 (Fla. 1st DCA 1998).
We conclude that the trial court erred in not directing a verdict for Jacobs on both liability and comparative negligence.

Jury Instructions and Verdict Form
A jury instruction which tends to confuse rather than enlighten the jury is cause for reversal if it may have misled the jury and caused them to arrive at a conclusion that they otherwise would not have reached. See Allstate Ins. Co. v. Vanater, 297 So.2d 293, 295 (Fla.1974); Poole v. Lowell Dunn Co., 573 So.2d 51 (Fla. 3d DCA 1990). Reversal is required where a jury might reasonably have been misled, regardless of whether it has actually been misled. See Snedegar v. Arnone, 532 So.2d 717 (Fla. 4th DCA 1988).
Over Jacobs' objections, the trial court instructed the jury on the defense of mitigation in addition to the defense of comparative negligence. Also over Jacobs' objection, the trial court submitted the case to the jury on a special interrogatory verdict which contained separate questions *1181 regarding comparative negligence and mitigation. We agree with Jacobs' assertion that the defense was attempting to secure a double reduction of Jacobs' damages. This is evidenced by the following argument made to the jury by defense counsel:
Defense Counsel: You could have them both. Theoretically you can find that Mr. Jacobs was ten percent comparative B let's say for discussion purposes B so his verdict would be reduced by ten percent. You can also find in addition to that that he did not mitigate damages to the extent of $10,000., which would also be subtracted from the verdict. Theoretically you can do both ...
Jacobs cites Parker v. Montgomery, 529 So.2d 1145 (Fla. 1st DCA 1988), in support of his position. In Parker, the First District held that the concept of mitigation of damages was subsumed within the defense of comparative negligence as adopted in Florida. See id. at 1147. The Florida Supreme Court agreed in Ridley v. Safety Kleen Corp., 693 So.2d 934 (Fla.1996), adopting the First District's analysis. The Florida Supreme Court also held that there should only be one deduction for comparative negligence on the verdict form, not two separate deductions for comparative negligence and mitigation. See id. at 943-44.
In the case at hand, the trial court was concerned that the jury "might get confused", but instructed the jury that comparative negligence and mitigation were separate concepts. The trial court gave the jury a verdict form which treated these as two separate issues. The jury was thus given two separate chances to reduce Jacobs' verdict. The jury twice requested a copy of the court's instructions. The jury then found that Jacobs was comparatively negligent, awarded zero damages for comparative negligence but found that Jacobs had $60,000 in damages and then reduced those damages by $47,000 to $13,000 based on mitigation. We believe this is indicative that the jury was confused with the court's instructions and verdict form and believe that the jury might reasonably have been misled.
We agree with Jacobs that defendants' citation of authority confirms rather than dispels the issue of jury confusion. Both Jenkins v. Graham, 237 So.2d 330 (Fla. 4th DCA 1970), and Banks v. Salina, 413 So.2d 851 (Fla. 4th DCA 1982), were based on the doctrine of "avoidable consequences," a doctrine that was abolished with the adoption of comparative negligence. See Parker, 529 So.2d at 1149.
In conclusion, we find the court's instructions and verdict form were erroneous, reasonably misled the jury and warrant a new trial. However, because we find that Jacobs was entitled to a directed verdict on liability and comparative negligence, the new trial will be limited to the amount of Jacobs' damages.

Admission of Bad Character Evidence
Evidence of a person's character or trait of character is patently inadmissible "to prove that he acted in conformity with it on a particular occasion." § 90.404(1), Fla. Stat. (1997). Similarly, proof of other "crimes, wrongs or acts" is forbidden when used "solely to prove bad character or propensity." § 90.404(2), Fla. Stat. (1997). In addition, it is improper to litigate purely collateral matters solely for the purpose of impeaching a party or a witness. See O'Neil v. Gilbert, 625 So.2d 982 (Fla. 3d DCA 1993); Hernandez v. Miami Skyways Hotel Partnership, 564 So.2d 574 (Fla. 3d DCA 1990).
The evidence that defendants introduced over Jacobs' objections was used solely for this improper purpose. Jacobs sued the defendants for their negligent disposition of his personal property. The defense testimony was that Jacobs was a bad roommate who paid less rent than he had agreed to pay to Westgate and another roommate and that Jacobs had bounced checks. Basically, the defendants were trying to show that Jacobs deserved what he got, however this evidence was clearly irrelevant to the case. As Jacobs correctly points out, this evidence "served only the plainly prejudicial purpose, which was eagerly exploited, of disparaging the witness's character and thus the acceptability *1182 of [his] testimony...." O'Neil v. Gilbert, 625 So.2d 982, 983 (Fla. 3d DCA 1993); La Reina Pharmacy, Inc. v. Lopez, 453 So.2d 882, 884 (Fla. 3d DCA 1984)("An atmosphere was created in which the jury would dislike the Plaintiff because she made such a comment and then rule against the Plaintiff simply because they disliked her."); see also Smith v. Hooligan's Pub & Oyster Bar, Ltd., 753 So.2d 596 (Fla. 3d DCA 2000).
In the case at hand, there was no defense to the defendants' own negligent conduct, and Jacobs was the only witness to the damage he sustained. We agree with Jacobs that the bad character evidence was used to prejudice the jury against him so that he would be less believable in the action, as well as on the amount of his damages. This was therefore impermissible character evidence and impeachment on collateral issues which we do not believe was harmless.
For all of the foregoing reasons, we reverse the trial court's Amended Final Judgment with directions to direct a verdict in Jacobs' favor on both the issue of liability and the defense of comparative negligence. The case is remanded for a new trial limited to the amount of Jacobs' damages. Upon retrial for damages, the trial court is directed to exclude the inadmissible bad character evidence.
Reversed and remanded.
NOTES
[1] 3.1 Preemptive Charges: Issues Arising On Claim

d. directed verdict on liability:
(defendant) was negligent and that such negligence was a legal cause of [loss][injury][or][damage] to (claimant). (Claimant) is therefore entitled to recover from (defendant) for such [loss][injury][or][damage] as is shown by the greater weight of the evidence to have thus been caused.